STEWART *v.* GROCE.

1. SALE UNDER SECOND MORTGAGE—APPLICATION OF PROCEEDS.—Where land is sold under a second mortgage by the mortgagee under a power of sale requiring the surplus proceeds of sale to be applied to such junior liens as should give written notice thereof, or else to the mortgagors, and the proceeds of sale are applied, at the instance of the mortgagors, *first*, to a senior mortgage which contained no power of sale, and then the remainder to the second mortgage, the mortgagors have no right to any part of the proceeds,

but the surplus, after paying the second mortgage, is held by the mortgagee in trust for a third mortgage of which he had knowledge, although no written notice of it was given to him.

2. IBID.—IBID.—The sale of the land for its full value did not justify the second mortgagee in applying any portion of the proceeds of sale to the senior lien, but the land still remained subject to such first lien, and a junior lien was entitled to the surplus proceeds.

3. IBID.—IBID.—But the assignee of the junior lien cannot recover of this second mortgagee so much of these present proceeds as was paid over to his assignor by the holder of the first mortgage after his receipt of this money, nor to the extent that he used in the purchase of this third mortgage property given to his wife by her father, who was himself responsible as surety for the debt secured by such third mortgage.

Before WITHERSPOON, J., Spartanburg, October, 1893.

This is a second appeal in the case reported as *Earle* v. *Groce*, in 37 S. C., 560. The Circuit decree was as follows:

The plaintiff, as assignee of a junior mortgage, seeks in this action to compel the defendant, A. B. Groce, as administrator, to account for the surplus proceeds of land sold by John Wheeler, under a senior mortgage containing a power of sale. The defendants, W. L. Morgan, A. J. Morgan, O. P. Morgan, and L. A. Greene, on December 6th, 1886, purchased 596 acres of land, including the Crawfordville Factory, for $6,435, at sheriff's sale, under order of court, paying one-half cash, and executing their bond and a mortgage of the premises to L. M. Gentry, as sheriff of Spartanburg County, for the remaining half of the purchase money. The mortgage to the sheriff did not contain a power of sale. On the 11th day of December, 1886, the defendants, W. L. Morgan, A. J. Morgan, O. P. Morgan, and L. A. Greene, to secure their note of even date for $5,655, executed and delivered to John Wheeler a second mortgage of the same land, which contains a power of sale, authorized the mortgagee to become the purchaser, if a sale was made in the exercise of said power, and stipulated that in case of a sale, the mortgagee would hold the overplus proceeds of sale subject to the rights of the holder of subsequent lien, who may give express notice in writing of the holding of such lien, and if no such notice be given, then to pay the overplus to the de-

fendant mortgagor. On the 14th of January, 1888, the defend-ants, W. L. Morgan, A. J. Morgan, and O. P. Morgan, executed to W. S. Thomason, as probate judge, a third mortgage of the same land, to strengthen the guardianship bond of the defendant, W. L. Morgan, as guardian of Lillie R. Montgomery, now the wife of Thomas Earle. To further secure the conditions of said guardian bond, the said defendant last above named also assigned and transferred certain notes and accounts with said probate judge for Spartanburg County.

On the 4th of February, 1888, under the power contained in his mortgage, after default, John Wheeler sold the mortgaged premises, after due advertisement, on saleday in February, bid it off at $8,500, executed a deed to himself, and on the same day paid off and took an assignment of the oldest mortgage on the property held by the sheriff. John Wheeler died intestate during the year 1888, and the defendant, A. B. Groce, is the duly qualified administrator of his estate. This action was originally instituted by Lillie R. Earle, as assignee of the probate judge, to compel the administrator of John Wheeler to account to her as the holder of a junior mortgage for the over-plus realized by John Wheeler from the sale of the mortgaged premises, under the power of sale contained in his senior mortgage. Since the commencement of the action, Lillie R. Earle has assigned and transferred her interest in said mortgage to the plaintiff, W. L. Stewart, who is now the *bona fide* owner and holder of said junior mortgage. It appears that the defendant, L. A. Greene, has sold and transferred his interest in the 596 acres of land to his codefendants, W. L., A. J., and O. P. Morgan, before the sale of the premises by John Wheeler under his mortgage. All of the issues were referred to the master.

The master concludes as matter of law that the defendant, A. B. Groce, as administrator of John Wheeler, must account to plaintiff for the overplus in the hands of John Wheeler, realized from the sale of the mortgaged premises, after paying his debt and costs. The master states that this amount due plaintiff is left open for future reference, in which a full accounting will be made. The defendant, A. B. Groce, as administrator of John Wheeler, excepts to the report of the master, and the

cause was heard upon said exceptions.   The main point raised
by this exception is, did John Wheeler dispose of or convert
the surplus proceeds of the sale of the premises, after paying
his debt and costs, contrary to law.

No case has been cited in which this point has been decided
by our Supreme Court, and resort must be had to the adjudica-
tion by the courts of other States.   I concur with the master
in the finding as matter of fact, that the property brought a
fair price at the sale made by John Wheeler.   I am also satis-
fied that John Wheeler acted in good faith, and under the
advice of counsel applying a portion of the funds of sale to the
first mortgage on the premises held by the sheriff.   It seems
to me, however, that the rights and liability of John Wheeler
must be determined by reference to the mortgage under which
he sold the property.   He could not exceed the authority con-
ferred upon him under the terms of his mortgage.   In selling
under the power contained in his mortgage he became a trustee
of the mortgagor as to any surplus of the proceeds of sale real-
ized, after paying his debt and costs.   By the terms of his
mortgage, John Wheeler undertook to pay over the overplus
to the mortgagee, if no claim was made on him in writing for
such overplus by subsequent lien encumbrances.   It does not
appear that John Wheeler had express notice in writing by the
holder of the junior mortgage executed to the probate judge,
but said mortgage was recorded, and the probate judge testifies
that John Wheeler had knowledge of the junior mortgage, and
talked to him about it.   I do not think that the failure to give
written notice of the junior mortgage can have the effect of re-
leasing the estate of John Wheeler from liability to account.
The sale by John Wheeler only conveyed the equity of redemp-
tion.   It cut off the lien of that mortgage executed to the
probate judge of subsequent date, but could not affect the
older lien of the sheriff's mortgage.

The sheriff had commenced proceedings to foreclose his senior
mortgage at the time the property was sold by John Wheeler
under his junior mortgage.   I have no doubt that it was under-
stood by the sheriff that his senior mortgage would be paid out
of the proceeds of the property to be sold by John Wheeler

under his junior mortgage, but such understanding could not modify the terms or enlarge the authority conferred upon John Wheeler under his mortgage. A foreclosure by suit was the sheriff's only remedy, and he could not have authorized John Wheeler to do what he himself could not do. No understanding between the sheriff and John Wheeler as to the application of the proceeds of sale could affect the rights of the mortgagors or the holder of the junior mortgage. It would seem to be a great hardship to require the estate of John Wheeler to account for the overplus, but under the well established principles of law referred to in the master's report, I feel constrained to concur in the findings by the master as matter of fact, as well as in his conclusions as matter of law.

It is, therefore, ordered and adjudged, that the master's report herein be confirmed, and that the exceptions thereto by the defendant, A. B. Groce, as administrator of John Wheeler, be overruled. It is further ordered, that it be referred to the master for Spartanburg County to take an account and report upon the amount due plaintiff, as assignee of Lillie R. Earle, upon the mortgage executed January 14th, 1888, to W. S. Thomason, probate judge for Spartanburg County, his successors or assigns, by the defendants, W. L., A. J., and O. P. Morgan. In said accounting, the plaintiff should be required to account for any sum of money received by Lillie R. Earle, or by the plaintiff as her assignee, upon notes or accounts transferred by W. L., A. J., and O. P. Morgan, as additional security for the performance of the conditions of the bond of W. L. Morgan, as guardian of Lillie R. Earle, formerly Lillie R. Montgomery; upon the coming in of the report of the master, any of the parties to this action are at liberty to apply at the foot of this decree for such further orders as may be deemed necessary to carry out this decree. No direction will be made as to cost until the coming in of the master's report.

From this decree the defendant administrator appealed upon the following grounds, to wit:

That his honor erred: 1. In holding that the failure to give written notice of the junior mortgage cannot have the effect of

releasing the estate of John Wheeler for liability to account to such junior mortgagee for the overplus of the proceeds of the sale remaining after the satisfaction of his mortgage. And in not holding that plaintiff has no right to recover, not having given Wheeler "express notice in writing" of the junior mortgage. 2. In not holding that no express notice in writing of plaintiff's mortgage having been given, the surplus is, under the terms of the power of sale, payable to the mortgagors, and the mortgagors did receive the benefit of it. 3. In holding that the understanding between the sheriff and John Wheeler that the sale should be made under the junior mortgage, and the proceeds of the sale be applied to the satisfaction of the sheriff's senior mortgage, did not justify or protect Wheeler in so applying the proceeds. And in sustaining the master's finding that the whole estate in the land could not have been sold free from encumbrance, even with consent of senior encumbrancer. 4. In sustaining the master's finding, that the prior mortgage could not be paid out of the proceeds of the sale without consent of the subsequent encumbrancers. 5. In not holding that the plaintiff and the defendant Morgans are estopped by their receipts from the sheriff of the moneys which they allege were improperly paid to them, and which they are seeking by this action to recover again. 6. In not holding that plaintiff could not proceed against the defendant till after having exhausted the other securities assigned for Mrs. Earle's benefit to the probate judge. 7. In holding this defendant liable for interest. 8. In sustaining the master's finding that the defendant should pay off the amount due plaintiff by her guardian, and then that the balance of the $3,753.24 and interest should be paid to the defendants, Morgan Bros. 9. In at least not directing in the accounting ordered by him, that this defendant should have credit for the amounts that have been received by plaintiff or her assignee upon the guardianship bond from the estate of the surety, Samuel Morgan. 10. In not holding that if Wheeler erred in paying off the senior mortgage, it was a mistake made by him under advice of his attorney, and he should be protected by the Court of Equity,

especially as the plaintiff parted with no right and suffered no loss on account of the mistake, if it was such.

The attorney for the respondents, Stewart and the Morgans, gave notice that he would ask to have the decree of the Circuit Judge sustained upon the ground that the title to the property being in John Wheeler when the mortgage of L. M. Gentry was assigned to him, that the same was satisfied by operation of law.

*Mr. Stanyarne Wilson*, for appellants.

*Mr. R. K. Carson*, contra.

November 26, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. The facts of this controversy, with the exception of some additional ones, are thus summarized in the opinion of this court (in *Earle* v. *Groce*), as reported in the *37 S. C., 560:* "It appears from the pleadings and other proceedings in this case that on the 6th day of December, 1886, the Crawfordsville Factory tract of land was sold by the sheriff of Spartanburg County, and bid off by W. L. Morgan, A. J. Morgan, and O. P. Morgan, and L. A. Green, who complied with the terms of sale by paying one-half in cash and giving their bond to the sheriff secured by a mortgage of the premises for the other half, which mortgage was in the usual form of mortgages to public officers, and contained no power of sale; that on the 11th of December, 1886, the same persons executed a second mortgage to John Wheeler, the intestate of defendant Groce, on the same land, which last mentioned mortgage did contain a power of sale; that on the 14th of January, 1888, the said W. L. Morgan, A. J. Morgan, and O. P. Morgan executed a third mortgage on the same tract of land to the judge of probate for Spartanburg County, which was subsequently assigned to the plaintiff herein; that on the 4th of February, 1888, the said John Wheeler, by virtue of the power of sale contained in his mortgage, offered the said land for sale, and himself became the purchaser thereof, and applied the proceeds of the sale to the payment of the debt secured by the mortgage to the sheriff and to the payment of the debt secured by his

own mortgage, which exhausted the proceeds. Whereupon the plaintiff commenced this action, to which the said L. A. Green has not been made a party, claiming that the said John Wheeler had no right to apply any part of the proceeds of sale made by him to the payment of the debt secured by the mortgage to the sheriff, but that the said Wheeler was bound, after satisfying the debt due to himself, to apply any surplus of the proceeds of sale that then remained in his hands *first* to the payment of the debt secured by the mortgage to the judge of probate, which had been assigned to her, and the balance, if any, to the mortgagors in the mortgage to Wheeler, of whom, as has been stated, L. A. Green is one. The issues in the action were referred to the master, who found in accordance with this view; but upon exceptions to his report, the Circuit Judge overruled the report of the master, and rendered judgment dismissing the complaint. From this judgment the plaintiff * * appeals." * * On that appeal this court decided that L. A. Green was a necessary party, and in its judgment reversed the decree of the Circuit Court *without prejudice*, and remanded the cause to the Circuit Court to carry out its direction.

The said L. A. Green has been made a party defendant, but disavows any interest therein, having long since conveyed all his interest to the defendants, Morgan. A change was made in the person of the plaintiff, Mrs. W. L. Stewart being substituted for Mrs. Lily Earle under the following circumstances: The wife of W. L. Stewart was the daughter of Samuel Morgan, deceased, who was in his lifetime a surety on the bond of his brother, W. L. Morgan, as the guardian of the estate of Mrs. Lily-Earle, *nee* Montgomery, and the said Samuel Morgan had conveyed for love and affection to his daughter, Mrs. Stewart, a tract of land of over 235 acres, worth $2,500. Of the 235 acres, sixty acres were sold for $930, and, with $1,070 advanced by Mr. Stewart, was paid to Mrs. Earle in full payment of the balance due, and she thereupon assigned the whole claim to W. L. Stewart. Thus he became plaintiff in her stead. The action came on to be heard before Judge Witherspoon on the following papers: the pleadings, the testimony, and the report of the master submitted at the previous hearing before Judge

Hudson, and some additional testimony taken before the master. By the decree of Judge Witherspoon, filed 29th December, 1893, he sustained the master's report, which, as was stated heretofore, gave the plaintiff the relief sought in the complaint. The defendant, A. B. Groce, as the administrator of John Wheeler, deceased, appealed from that decree. As the decree itself and the exceptions of appellant will appear in the report of the case, we will not reproduce them here. Nor will we, in our consideration of these exceptions, stop to formally repeat such as are overruled, and such as may be sustained.

In our anxiety to have an end of this already protracted litigation, we have taken the pains to set out fully what we conceive should be the final judgment in this case, having a due regard to the rights and equities of all the parties.

The senior mortgage was held by the sheriff, and contained no power of sale. The second mortgage was held by John Wheeler, with a power of sale coupled with this stipulation of the mortgagor, that the proceeds of sale, if made under the power, should be first applied to the payment of his debt, including accrued interest and costs of sale; *second*, that the surplus should be applied to junior liens, who should give written notice thereof, and in lieu of such notice, or if none such, then to the mortgagors. The third mortgage was to the probate judge, who assigned it to the plaintiff. Now when John Wheeler sold the property for $8,500, it was his duty, under his mortgage, to pay his debt, $4,729.26, and his costs, $17.50, and this left in his hands as mortgagee the sum of $3,753.24 to go to junior liens, if they should have given written notice to him of such liens, or if not to the mortgagors, the Morgans. But no written notice of any junior liens was given to Wheeler, and it would seem that this sum of $3,753.24 should have been paid to the mortgagors, the Morgans. If this were so, the case would be soon ended, for it is in proof and not disputed that the Morgans were at Wheeler's elbow urging him to take up the senior mortgage, that held by the sheriff, and this Wheeler did. Unfortunately for Wheeler, at the time the sale took place and at the time he had this conference with the Morgans, the mortgagors, these very mortgagors,

had deprived themselves of the power to give him (Wheeler) any such directions, for, by operation of law, when they (the Morgans) made the mortgage to Thomason, the judge of probate, they thereby transferred to such judge of probate all their rights under their mortgage to Wheeler, to have him pay to them any surplus at the sale made by Wheeler, and it was his duty to have paid enough of the surplus to Thomason as judge of probate to satisfy his mortgage.

But here the appellant brings to the attention of the court these circumstances: (1) That at the sale of the lands made by Wheeler, the price realized ($8,500) was the full value of the fee simple title. This finding of fact is that of both the master in his report and the Circuit Judge in his decree, and is not assailed by any party to the record. Therefore, it is to us *a fact*. (2) That of these proceeds of sale paid by Wheeler to the sheriff in liquidation of the amount due on the senior lien by mortgage, there was paid on the junior mortgage of Thomason, as judge of probate, the sum of *$1,532.63*, and that the balance of the $3,753.24 was applied by the sheriff to the Morgans, the mortgagors, and, therefore, not a dollar thereof remained in the hands of John Wheeler. (3) That when W. L. Morgan was appointed guardian of the estate of Mrs. Earle, his sureties were Samuel Morgan, A. J. Morgan, and O. P. Morgan, but that by reason of the death of Samuel Morgan insolvent, this mortgage to Thomason, as judge of probate, was given, and thus Samuel Morgan was responsible for one-third part of what the sureties to W. L. Morgan had to pay for his default as guardian; and that inasmuch as the $3,107.50, with interest thereon at seven per cent. from the 12th December, 1889, will, on the 30th October, 1894, amount to $4,151.62, which, after allowing $1,383.87 as the amount thereof paid by W. L. Morgan as principal (he being guardian), will thus leave $2,767.65 to be paid by Samuel, A. J., and O. P. Morgan, as sureties, of which amount Samuel is responsible for $922.91; and as the present holder of Mrs. Lily Earle's claim as the ward of W. L. Morgan used about $922.91 of the funds of Mrs. Stewart, the daughter of Samuel Morgan, derived from the sale of land conveyed to her for love and affection of her father,

in payment of the $1,900 paid to Mrs. Lily Earle on the settle-
ment with her by the present plaintiff on the 22d February,
1892, which payment by Mrs. Stewart was proper, by deduct-
ing $922.91 from the $1,900, there will be due to the plaintiff
$978.09, with interest thereon from the 22d February, 1892, as
the amount to be recovered by the present plaintiff from the
estate of John Wheeler, deceased.

We will now consider the effect of these propositions of fact.
We regret to say that we do not see how this sale for the full
value of the lands by John Wheeler, at the sale thereof
under the power of sale in his mortgage, can help the
defendant here.   It is no longer an open question in this
State that all that one acquires as a purchaser under a sale of
property by virtue of a junior lien, is the property sold, freed
from all junior liens, *but still subject to the senior liens.* *Norman*
v. *Norman*, 26 S. C., 41, and the authorities there cited.   The
interest of the junior lien by such a sale is transferred from the
land sold to the purchase money, and in that fund there is no
claim except for the surplus that may remain.   As to that sur-
plus, the holders of junior liens have a right to look to it as a fund
held in trust for them.   Such junior liens can not be prejudiced
by any mistakes the purchaser may make, to which they have
in no wise contributed.   In the case at bar, it is not contended
that Mrs. Earle or the probate judge Thomason did any act
which led to the mistake of Wheeler.   Not so the mortgagors,
the Morgans.   They insisted upon Wheeler making the sale
and payment to the sheriff, in order to stop the sheriff in his
suit for foreclosure of his mortgage given by them, which was
then pending.   They are estopped by their conduct from ques-
tioning Wheeler's actions in the premises, but they did not
represent Mrs. Earle or Mr. Thomason, the judge of probate.
As we have heretofore remarked, when the Morgans made their
third mortgage on the lands in question, they assigned and
transferred all their rights to any surplus that might remain
at a sale made by Wheeler to Thomason, as judge of probate.
This fact was actually and constructively known by Wheeler,
and he, therefore, acted at his peril in paying as the purchase
money of what is sometimes called the equity of redemption of

the Morgans, the full value of a fee simple title to said lands when discharged of all encumbrances.

We think, however, the receipt by Thomason, as probate judge, of the $1,532.62 from the proceeds of sale, with a full knowledge, as he had, of all the faccts connected with the payment thereof by Wheeler to the sheriff, and the subsequent receipt of this money by Mrs. Earle, bound them to the extent of this payment as so much payment of the surplus in the hands of Wheeler applicable to their (third) mortgage, but no further than such payment extends. We conclude, also, that the present plaintiff having used $922.91 derived from the sale of a part of the lands in the hands of his wife, derived as a gift from Samuel Morgan, who was also a surety on the bond of W. L. Morgan as guardian, and, therefore, liable along with A. J. and O. P. Morgan to make good all defaults of W. L. Morgan as such guardian, in the purchase from Mrs. Earle of this mortgage, must have his claim for $1,900 reduced by this $922.91, and that all he can recover from A. B. Groce, the administrator of the estate of John Wheeler, deceased, is $978.09, with interest from the 22d February, 1892. As before remarked, none of the Morgans are entitled to anything at the hands of said administrator.

It is the judgment of this court, that the judgment of the Circuit Court be modified as herein required, and that the cause be remanded to the Circuit Court to there enter a judgment for the present plaintiff against A. B. Groce, as administrator of John Wheeler, deceased, for $978.09, with interest thereon from the 22d February, 1892, and, also, that the claims of W. L. Morgan, A. J. Morgan, and O. P. Morgan against said A. B. Groce, as administrator of John Wheeler, deceased, be disallowed.